USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   06/05/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMBER ADAM, individually and on behalf of all others similarly situated,

                 Plaintiffs,

-v.-

BLOOMBERG L.P.,

                 Defendant.
-----------------------------------------------------------------X

**OPINION & ORDER**

21-CV-4775 (JLR) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    Plaintiff Amber Adam, individually and on behalf of all others similarly situated ("plaintiffs"), brings this action for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against defendant Bloomberg L.P. ("Bloomberg"). Plaintiffs allege that Bloomberg willfully engaged in various unlawful employment practices, including failing to pay required overtime wages and failing to provide accurate wage statements.

    Plaintiffs now move for conditional certification of a collective action on behalf of Bloomberg's non-exempt employees in its Analytics Department, and they request that the Court (1) conditionally certify an FLSA collective of employees as a representative collective pursuant to 29 U.S.C. § 216(b); (2) facilitate notice of the FLSA action to the covered employees with an opt-in period of 90 days; (3) allow for the issuance of reminder notices; and (4) require Bloomberg to provide plaintiffs with the putative collective's identifying and contact information.

    For the reasons stated below, the motion is denied.[1]

---

[1] As other courts have noted, in contrast to the requirements of Rule 23 pertaining to class actions, "neither the FLSA nor the Federal Rules of Civil Procedure provide for the

I. <u>**PROCEDURAL HISTORY**</u>

Plaintiffs commenced this action against Bloomberg on May 28, 2021.  Complaint ("Compl."), Dkt. No. 1.

On August 20, 2021, Plaintiffs moved for conditional certification of a putative collective of "all Help Desk Reps in the Bloomberg Analytics Department who were classified by Bloomberg as exempt from overtime and were not paid time and one half for hours over 40 worked in one or more weeks."  Brief in Support of Motion to Approve Collective Action Notice ("Pl. Mem."), Dkt. No. 15 at 1; <u>see</u> also Notice of Motion ("Mot."), Dkt. No. 14; Declaration of Artemio Guerra in Support of Plaintiff's Motion to Approve Collective Action Notice dated August 20, 2021 ("Guerra Decl."), Dkt. No. 16; Declaration of Amber Adam in Support of Plaintiff's Motion to Conditionally Certify FLSA Collective Action and to Issue Notice dated August 17, 2021 ("Adam Decl."), Dkt. No. 17; Declaration of Camryn Clemens in Support of Plaintiff's Motion to Conditionally Certify FLSA Collective Action and to Issue Notice dated August 17, 2021 ("Clemens Decl."), Dkt. No. 18.

Following the filing of the motion, the parties sought and received a stay of deadlines in the case to permit them to proceed with private mediation.  <u>See</u> Order dated Sept. 8, 2021, Dkt. No. 22.  Once informed that the parties were prepared to proceed with litigation, the Honorable Jennifer L. Rochon, the district judge currently assigned to this case, reinstated plaintiffs' motion

---

certification of an FLSA collective action."  <u>Amendola v. Bristol-Myers Squibb Co.</u>, 558 F. Supp. 2d 459, 463 n.1 (S.D.N.Y. 2008); <u>see also</u> <u>Zhongle Chen v. Kicho Corp.</u>, No. 18-CV-7413 (PMH) (LMS), 2020 WL 1900582, at *1 n.2 (S.D.N.Y. Apr. 17, 2020); <u>Tate v. WJL Equities Corp.</u>, No. 13-CV-8616 (JLC), 2014 WL 2504507, at *1 n.1 (S.D.N.Y. June 3, 2014).  Although Adam has styled her motion as a request "for an order conditionally certifying this case . . . as a[n] [FLSA] collective action," it is more appropriately characterized as a request for the Court to authorize notice to potential opt-in plaintiffs.  <u>Id.</u>

and directed the resumption of briefing. See Order dated Nov. 8, 2022, Dkt. No. 41.[2] Bloomberg then filed a memorandum of law and three affidavits in opposition to plaintiffs' motion on November 11, 2022, arguing that they had failed to demonstrate the existence of employees similarly situated to plaintiffs. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Judicial Notice ("Def. Mem."), Dkt. No. 42, at 1-2; Declaration of William Davis in Support of Defendant's Opposition to Plaintiff's Motion to Approve Collective Action Notice dated November 10, 2022, Dkt. No. 43; Declaration of Cono Sanseverino in Support of Defendant's Opposition to Plaintiff's Motion to Approve Collective Action Notice dated November 10, 2022, Dkt. No. 44; Declaration of Kerri Catalano in Support of Defendant's Opposition to Plaintiff's Motion to Approve Collective Action Notice dated November 11, 2022, Dkt. No. 45. Plaintiffs filed a reply brief on December 2, 2022. Plaintiff's Reply Brief in Further Support of the Motion to Approve Collective Action Notice, Dkt. No. 46.

## II. DISCUSSION

### A. Legal Standards for Conditional Collective Action Certification

The FLSA provides that "any one or more employees" may bring suit on behalf of themselves and other "similarly situated" employees who "consent in writing to become such a party." 29 U.S.C. § 216(b); see also Xing Ye v. 2953 Broadway Inc., No. 18-CV-4941 (LAP), 2020 WL 2904070, at *2 (S.D.N.Y. June 3, 2020). "Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to

---

[2] The case was originally assigned to the Honorable Edgardo Ramos and was re-assigned to Judge Rochon in September 2022.

opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed a two-stage certification process in determining whether to certify a collective action under the FLSA. See Myers, 624 F.3d at 554–55; Martin v. Sprint/United Mgmt. Co., No. 15-CV-5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) (collecting cases). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers, 624 F.3d at 555. Although "[t]he FLSA does not define the term 'similarly situated,'" the Second Circuit recently explained that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 515–16 (2d Cir. 2020) (citing Campbell v. City of Los Angeles, 903 F.3d 1090, 1114 (9th Cir. 2018)). "That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id.; see also Pequero v. Montafon, LLC, No. 18-CV-12187 (DF), 2020 WL 4016756, at *8 (S.D.N.Y. July 15, 2020) ("In accordance with the reasoning of Scott, the named Plaintiffs need not show that there are no dissimilarities among them and other employees, as 'they may proceed in a collective to the extent they share a similar issue.'" (quoting Scott, 954 F.3d at 516) (emphasis added)).

The requirements for conditional collective action certification are "unrelated to" and less stringent than those for certifying a class under Rule 23. Scott, 954 F.3d at 520. A plaintiff's "burden is minimal because the determination that the parties are similarly situated is merely a preliminary one, and that determination may be modified or reversed after discovery." Weng

4

Long Liu v. Rong Shing, Inc., No. 12-CV-7136 (TPG), 2014 WL 1244676, at *2 (S.D.N.Y. Mar. 26, 2014) (citing Indergit v. Rite Aid Corp., Nos. 08-CV-9361 (PGG), 08-CV-11364 (PGG), 2010 WL 2465488, at *4 (S.D.N.Y. Jun. 16, 2010) (internal citation omitted)).  In determining whether potential opt-in plaintiffs are similarly situated, courts should not "weigh the merits of the underlying claims, attempt to resolve factual disputes, or evaluate credibility." Aguilo v. Vails Gate Cleaners Inc., No. 18-CV-8850 (PMH) (JCM), 2020 WL 3545558, at *3 (S.D.N.Y. June 30, 2020) (citing Morris v. Lettire Const. Corp., 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012)).  The role of the court at this stage is simply to decide whether plaintiffs have made a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555 (citations and punctuation omitted).

Although the plaintiff bears a low burden of proof, "the burden is not non-existent." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010); accord Mata v. Foodbridge LLC, No. 14-CV-8754 (ER), 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015) (citing Sanchez v. JMP Ventures, L.L.C., No. 13-CV-7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (certification does not automatically ensue)).  "Even at the conditional certification stage, a plaintiff's burden under § 216(b) 'cannot be satisfied simply by unsupported assertions,' or with 'conclusory allegations.'" Zhongle Chen v. Kicho Corp., No. 18-CV-7413 (PMH) (LMS), 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020) (quoting Myers, 624 F.3d at 555; Morales v. Plantworks, Inc., No. 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006)).  Instead, a plaintiff must offer "actual evidence of a factual nexus" between her situation and those of other allegedly similarly situated employees. Qing Gu v. T.C. Chikurin, Inc., No. 12-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014).

In the second stage, which occurs after discovery "when the Court has a more developed record, the named plaintiffs must prove that 'the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" She Jian Guo v. Tommy's Sushi Inc., No. 14-CV-3964 (PAE), 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (quoting Myers, 624 F.3d at 555). At that stage, a defendant can move to decertify the collective if the record reveals that the claimants are not similarly situated, and their claims may be dismissed without prejudice. See id.; Myers, 624 F.3d at 555.

B. Plaintiffs' Factual Allegations in Support of Conditional Collective Action Certification

In support of their motion, plaintiffs have submitted a declaration from Adam describing the wage-and-hour violations that she and others have allegedly experienced, along with a declaration from an opt-in plaintiff, Camryn Clemens, that is virtually identical in substance. Adam alleges that she worked in Bloomberg's Analytics Department from February 2019 to April 2021. Adam Decl. ¶¶ 3-4. Clemens alleges that they worked in Bloomberg's Analytics Department from April 2019 to March 2021. Clemens Decl. ¶¶ 3-4.

Adam characterizes her job broadly under the title "Help Desk Representative" (or "Help Desk Rep"), which she uses as an umbrella term to refer to various jobs within Bloomberg's Analytics Department, see Pl. Mem. at 2 n.4; Adam Decl. ¶ 5, including those who work on teams for "Fixed Income Trading, Front Line TOMS, AIM, and EMSX." Adam Decl. ¶ 6. Clemens adopts the same terminology and alleges that they worked as a Help Desk Rep as well. Clemens Decl. ¶¶ 5-7. According to the declarations, most Help Desk Reps work in Bloomberg's New York City office, and the remainder work out of Bloomberg's office in San Francisco. Adam Decl. ¶ 9; Clemens Decl. ¶ 9. Adam claims that she "worked closely with other Help Desk Reps" in the New York City office and "could see other Help Desk Reps

6

working at their desks [ ] because the office is designed as an open-air office." Adam Decl. ¶ 10. Likewise, Clemens contends that they worked with other Help Desk Reps and noted that their floor "had an open-air concept, meant to simulate a trading floor in a stock exchange," so they "observed other Help Desk Reps working." Clemens Decl. ¶ 10.

      Both Adam and Clemens assert that Bloomberg pays Help Desk Reps a fixed salary based on a 40-hour work week and does not adjust pay to compensate Help Desk Reps for working more than 40 hours, even though they "regularly work for Bloomberg for more than 40 hours per week." Adam Decl. ¶¶ 20, 30; Clemens Decl. ¶¶ 20, 30, 32. Help Desk Reps are scheduled to work eight hours a day from Monday through Friday. Adam Decl. ¶ 12; Clemens Decl. ¶ 12. "Regardless of Help Desk Reps' titles, or the teams they worked in," both Adam and Clemens contend that they all have "the same primary job duty," which is to "provide customer service and technical assistance to Bloomberg's customers regarding how to use proprietary Bloomberg software." Adam Decl. ¶ 13; Clemens Decl. ¶ 13. Help Desk Reps handle a "variety of issues," such as setting up new Bloomberg Terminal users, deactivating old users, "responding to login requests," and, if necessary, formally escalating a request to a Bloomberg engineer. Adam Decl. ¶ 16. These requests come in through Bloomberg's "Instant Bloomberg" chat system, through which Help Desk Reps handle "multiple chats, phone calls, and emails" from customers at once. Adam Decl. ¶¶ 14-15; Clemens Decl. ¶¶ 14-15. Additionally, Help Desk Reps maintain a "floor chat," which is "a conversation with all other on-duty representatives and supervisors." Adam Decl. ¶ 15; Clemens Decl. ¶ 15. Help Desk Reps must attend a 5-to-10 day training before beginning their jobs, Adam Decl. ¶ 17; Clemens Decl. ¶ 17, and Bloomberg requires continuing study and certification exams as part of their role, Adam Decl. ¶ 18; Clemens Decl. ¶ 18.

According to both Adam and Clemens, Bloomberg requires Help Desk Reps to log on and begin working prior to the start of their shifts and may give employees poor performance evaluations for not being ready to accept requests "the minute" their shifts begin. Adam Decl. ¶¶ 21-22; Clemens Decl. ¶¶ 21-22; see also Pl. Mem. at 5 n.22 (citing Deposition of Chris Saven ("Saven Dep."), annexed as Exhibit 2 to Guerra Decl. Dkt. 16-2, at 154-56). Sometimes Help Desk Reps have to work through their lunch breaks, Adam Decl. ¶¶ 23-25; Clemens Decl. ¶¶ 23-25, which is not part of their paid eight-hour shift. Adam Decl. ¶ 12; Clemens Decl. ¶ 12. Depending on the number of inquiries pending for Help Desk Reps to handle, Bloomberg may require them to work past the end of their regularly scheduled shift, including from home, and without any timekeeping process or overtime pay. Adam Decl. ¶¶ 26-29; Clemens Decl. ¶¶ 26-29. Additionally, Help Desk Reps must work outside of their paid hours on top of their regular duties "to study for various certification exams and learn new developments in Bloomberg's software products." Adam Decl. ¶ 26; Clemens Decl. ¶ 26.

### C. Plaintiffs Have Not Made the Modest Factual Showing Required to Support Conditional Collective Action Certification

Plaintiffs seek to conditionally certify a collective of "all Help Desk Reps in the Bloomberg Analytics Department who were classified by Bloomberg as exempt from overtime and were not paid time and one half for hours over 40 worked in one or more weeks." Pl. Mem. at 1. For its part, Bloomberg rejects the label "Help Desk Rep," claiming that no such job exists and that plaintiffs' use of this term obfuscates the differences between what are actually at least five distinct jobs that plaintiffs have lumped together. Def. Mem. at 12-16. Bloomberg also argues that plaintiffs have failed to provide basic factual support for the notion that they are "similarly situated" to any potential members of the proposed collective and have not provided

8

non-conclusory allegations as to the job duties of any similarly situated person whom plaintiffs propose to be in their collective. Id. at 16-19.

As a threshold matter, Bloomberg's own factual assertions about its internal job categorizations and their various duties have very little bearing on the preliminary certification question. That's because "at this stage, the court may not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Hernandez v. City of New York, No. 16-CV-3445 (RA), 2017 WL 2829816, at *4 (S.D.N.Y. June 29, 2017) (quoting Warman v. Am. Nat'l Standards Inst., 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016)).

Nevertheless, plaintiffs' motion fails because they have not provided a sufficient basis at this preliminary stage for the Court to conclude that there are Bloomberg employees who are "similarly situated" to them. In general, "the burden at the first stage of certification is low." Delijanin v. Wolfgang's Steakhouse Inc., No. 18-CV-7854 (RA) (KHP), 2019 WL 1760154, at *6 (S.D.N.Y. Apr. 22, 2019). "The Court does not weigh the merits of the underlying claims at this stage." Id. (collecting cases). Rather, "[c]ourts in this Circuit [ ] commonly authorize[ ] the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees." Silva v. Calle 8, LLC, No. 12-CV-677 (ERK) (MDG), 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013).

However, conclusory allegations and "unsupported assertions" are not sufficient to support a motion for conditional collective action certification. Myers, 624 F.3d at 555 (citation omitted). "Rather, plaintiffs must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied." Hernandez, 2017 WL 2829816, at *4 (alterations omitted) (internal quotation marks omitted); see also Silva, 2013 WL

6330848, at *3 ("[W]here plaintiffs fail to provide either evidentiary support, such as affidavits or supporting documents, or specific factual allegations, courts routinely deny conditional certification.") (collecting cases). Plaintiffs consequently must provide factual detail or evidence beyond simply alleging that they observed or spoke with other similarly situated employees. See, e.g., Huertero-Morales v. Raguboy Corp., No. 17-CV-2429 (JCF), 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017) ("[I]nformation regarding where or when [a plaintiff's] observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.") (citation omitted); Qi Zhang v. Bally Produce, Inc., No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at *4 (E.D.N.Y. Apr. 22, 2013) (court "refuse[d] to conditionally certify a collective action" where plaintiff was "unwilling (or unable) to offer any evidence that other [employees] had similar duties and responsibilities as plaintiff").

Where a plaintiff bases her assertions regarding similarly situated employees upon her own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved. See, e.g., Sanchez, 2014 WL 465542, at *2 ("[W]here or when these observations or conversations occurred . . . is critical"). Specific factual allegations can include the names of similarly situated employees, their job titles, as well as information as to their duties and the hours they worked. See, e.g., Gu, 2014 WL 1515877, at *3; Silva, 2013 WL 6330848, at *3 (collecting cases). Without these details, "the Court is left with a list of generalized allegations" that are insufficient to conditionally certify a collective action. Sanchez, 2014 WL 465542, at *2. It is also helpful, but not necessary, when a plaintiff "adduce[s] evidence beyond [her] own personal observations," to provide affidavits of other employees or

10

other supporting documents. Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 448–49 (S.D.N.Y. 2013) (collecting cases).

Here, plaintiffs have failed to carry their modest burden because they have not provided the basis for their description of the duties of the other Help Desk Reps. Plaintiffs have provided only a declaration from Adam and from opt-in plaintiff Clemens, the latter of which is almost completely identical to the former. Other than an assertion by both declarants that they worked on a floor arranged in such a way that they could see and work with their co-workers generally, Adam Decl. ¶ 10; Clemens ¶ 10, and noting the existence of internal chats, Adam Decl. ¶ 15; Clemens Decl. ¶ 15, they offer no basis for their purported knowledge about any putative additional members to this proposed collective and provide no non-conclusory assertion that other employees shared the same duties. Likewise, outside of a single remark by Bloomberg's Rule 30(b)(6) witness about start time for unspecified workers, see Pl. Mem. at 5 n.22 (citing Saven Dep. at 154-56), plaintiffs have provided no support for the notion that they know of anyone else who was required to work outside of their shifts, that others were not paid for work they had to do outside of their shifts, or that they had any other experience in common with members of their proposed collective.

Plaintiffs' citations to other cases involving Bloomberg employees, Pl. Mem. at 12-13, do not suggest a different result because the failure here is that they have not identified individuals, regardless of a suggested categorization as "tech workers" (or Help Desk Reps), who potentially have the same duties and raise the same claims. Moreover, plaintiffs' insistence that the declarations they have provided carry their burden relies on inapposite references. See Pl. Mem. at 13. In Alvarez v. Schnipper Restaurants LLC, No. 16-CV-5779 (ER), 2017 WL 6375793, at *3–4 (S.D.N.Y. Dec. 12, 2017), for example, the plaintiff established similarity among delivery

11

workers by describing "five colleagues who he observed" experiencing the same violations as he alleged, whereas here, plaintiffs have failed to provide their observations of any identifiable colleague. And although plaintiffs are correct that "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit," Pl. Mem. at 13 (quoting Mata, 2015 WL 3457293, at *3 (citation omitted)), that case (Mata) denied conditional certification where the plaintiff's affidavit did not "provide any detail as to a single observation or conversation informing his decision to bring a collective action." Id. at *4 (punctuation omitted).

Indeed, courts consistently decline to approve conditional certification at this stage where there are only threadbare and unsubstantiated claims of similarity. See, e.g., Hickmon v. Fun & Fit LLC, No. 20-CV-10270 (RA) (JLC), 2021 WL 3578296, at *6 (S.D.N.Y. Aug. 13, 2021) (no certification where health aides' affidavits did "not identify any similarly situated employees by name" or provide other specific information and reiterated only allegations as applying also to "similar health aides"); Bonett v. Shawmut Woodworking & Supply, Inc., No. 19-CV-1125 (LJV) (MJR), 2021 WL 423181, at *4 (W.D.N.Y. Feb. 8, 2021) (no certification where plaintiff's declaration "fail[ed] to demonstrate how he knows that other . . . employees are similarly situated to him" and lacked "factual support for allegations of a common scheme impacting other employees"); Qing Gu, 2014 WL 1515877, at *3 (no certification where plaintiffs "ma[de] only general allegations that other employees of defendants were denied minimum wage and overtime compensation" and "fail[ed] to provide any factual detail about the other employees"). Indeed, outside of the two declarations asserting that the violations they experienced were shared by other employees, "[plaintiffs] neither identif[y] these employees nor explain[] the basis for [their] observations[;] [i]nstead, plaintiff[s] merely restate[] [their]

conclusory factual allegations in a variety of forms." Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 13-CV-60 (ILG), 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013); see also Zang v. Daxi Sichuan Inc., No. 18-CV-6910 (AMD) (SMG), 2020 WL 13680575, at *2 (E.D.N.Y. Aug. 19, 2020) ("[T]o assure the Court of the basis of a party's knowledge, plaintiffs should include details as to 'where or when the[ir] observations or conversations [with potential class members] occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class.'" (quoting Sanchez, 2014 WL 465542, at *2)).  On the present record, there is no indication of the identity of any additional potential plaintiff, how plaintiffs know that other employees with similar job duties exist, or how they know that those same people are likely to have faced the same wage-and-hour violations.

In sum, at the conditional certification stage, the key question is "whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citation omitted); accord Hallissey v. Am. Online, Inc., No. 99-CV-3785 (KTD), 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008).  Plaintiffs have failed to show the existence of "a factual nexus" between their experience and those of potential plaintiffs with regard to an FLSA violation.  See Cuaya v. VI Development Group, LLC, No. 19-CV-4290 (JLC), 2020 WL 5494371, at *5 (S.D.N.Y. Sept. 10, 2020) (citing Taveras v. D & J Real Estate Mgmt. II, LLC, 324 F.R.D. 39, 41 (S.D.N.Y. 2018)).  Accordingly, "Plaintiffs' attempts to broaden their allegations" to a larger collective are insufficient.  Bondi, 2018 WL 7246962, at *10 (quoting Levinson v. Primedia Inc., No. 02-CV-2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003)).

### III.   CONCLUSION

For these reasons, plaintiffs' motion for conditional certification is denied without prejudice to renewal upon a more developed factual record. See Mata, 2015 WL 3457293, at *5; see also Myers, 624 F.3d at 558 (district court "may continually evaluate, as the case progresses," whether collective notice should be approved). The Clerk is respectfully directed to close Docket No. 14 and mark it as "denied."

The Court will hold a telephone conference on **June 13, 2023 at 2:30 p.m.** to chart the further course of this litigation. The parties should use the Court's conference line at 877-873-8017 (access code: 5277586).

**SO ORDERED.**

Dated: June 5, 2023
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge